# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| **KATHY L.,**  **Plaintiff,**  v.  **ANDREW M. SAUL,**  **Commissioner of Social Security,**  **Defendant.** | **MEMORANDUM DECISION AND ORDER**  **Case No. 2:19-cv-00527-JCB**  **Magistrate Judge Jared C. Bennett** |

The parties in this case consented to have a United States Magistrate Judge conduct all proceedings, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[1] 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Before the court is Kathy L.'s ("Plaintiff") appeal of Defendant Andrew M. Saul's ("Commissioner") final decision determining that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, *id*. §§ 1381-1383f.

The court heard oral argument on July 30, 2020.[2] Natalie L. Bolli-Jones appeared on behalf of Plaintiff, and James L. Burgess appeared on behalf of the Commissioner. At the

---

[1] ECF No. 13.

[2] ECF No. 24.

conclusion of the hearing, the court took the matter under advisement. After careful consideration of the written briefs, the complete record, and oral arguments, the Commissioner's decision is affirmed for the reasons set forth below.

## PROCEDURAL BACKGROUND

Plaintiff alleges disability due to various physical and mental impairments. On February 16, 2016, Plaintiff applied for DIB and SSI.[3] Plaintiff's application was denied initially and upon reconsideration.[4] After Plaintiff appeared before an Administrative Law Judge ("ALJ") for administrative hearings, the ALJ issued a written decision on September 11, 2018, denying Plaintiff's claims for DIB and SSI.[5] On June 6, 2019, the Appeals Council denied Plaintiff's request for review,[6] making the ALJ's decision final for purposes of judicial review. 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481. On August 1, 2019, Plaintiff filed her complaint in this case seeking review of the Commissioner's final decision.[7]

## STANDARD OF REVIEW

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal

---

[3] ECF No. 8, Administrative Record ("AR ___") 176, 183.

[4] AR 53-54, 99-100.

[5] AR 12-25.

[6] AR 1-6.

[7] ECF No. 3.

standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted). The Commissioner's findings, "if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (quotations and citation omitted). "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]." *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citation omitted). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotations and citation omitted) (first alteration in original).

The aforementioned standards of review apply to the ALJ's five-step evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process). If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> Step one determines whether the claimant is presently engaged in substantial gainful activity. If [the claimant] is, disability benefits are denied. If [the claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.

> . . . .
>
> Step three determines whether the impairment is equivalent to one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity . . . . If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. If not, the evaluation proceeds to the fourth step . . . .

*Williams*, 844 F.2d at 750-51 (quotations and citations omitted); 20 C.F.R. §§ 404.1520(a)(4)(i)-(iii), 416.920(a)(4)(i)-(iii).

At the fourth step, the claimant must show, given her residual functional capacity ("RFC"), that the impairment prevents performance of her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). "If the claimant is able to perform [her] previous work, [she] is not disabled." *Williams*, 844 F.2d at 751. If, however, the claimant is not able to perform her previous work, she "has met [her] burden of proof, establishing a prima facie case of disability." *Id*.

At this point, "[t]he evaluation process . . . proceeds to the fifth and final step." *Id*. At this step, the burden of proof shifts to the Commissioner, and the decision maker must determine "whether the claimant has the [RFC] to perform other work in the national economy in view of [her] age, education, and work experience." *Id*. (quotations and citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If it is determined that the claimant "can make an adjustment to other work," she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," she is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

4

## THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of January 7, 2016.[8] At step two, the ALJ found Plaintiff suffered from a severe mental impairment: mood disorder.[9] The ALJ also found Plaintiff suffered nonsevere physical impairments: "history of bilateral shoulder surgery" and "bilateral hearing loss."[10] At step three, the ALJ found that Plaintiff did not meet the criteria for any listed impairment.[11] The ALJ then found that Plaintiff has a RFC "to perform a full range of work at all exertional levels, but with the following nonexertional limitations: She can perform simple, repetitive tasks with limited public contact."[12] At step four, the ALJ found Plaintiff could not perform any past relevant work.[13] At step five, the ALJ found Plaintiff was not disabled because she could perform work that existed in significant numbers in the national economy.[14]

---

[8] AR 17.

[9] *Id*.

[10] AR 17-18.

[11] AR 19-20.

[12] AR 20.

[13] AR 23-24.

[14] AR 24-25.

**ANALYSIS**

In support of her claim that the Commissioner's decision should be reversed, Plaintiff argues that the ALJ erred: (I) by failing to include her nonsevere physical limitations in the RFC assessment; and (II) in his treatment of certain medical opinions. The court addresses each argument in turn below.

**I.  The ALJ Appropriately Conducted the RFC Assessment.**

Substantial evidence supports the ALJ's RFC assessment. In assessing a claimant's RFC, the ALJ must consider all functional limitations and restrictions resulting from the claimant's impairments, both severe and nonsevere. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling ("SSR"), 96-8p, 1996 WL 374184, at *5 (July 2, 1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). The record must demonstrate that the ALJ *considered* all the evidence, but an ALJ is not required to *discuss* every piece of evidence. *Bradley v. Colvin*, 643 F. App'x 674, 676 (10th Cir. 2016) (citing *Mays v. Colvin* 739 F.3d 569, 576 (10th Cir. 2014)); *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Although the ALJ need not explicitly discuss each factor, the reasons stated must be sufficiently specific to permit meaningful appellate review. *Clifton,* 79 F.3d at 1009.

As noted above, the ALJ found both severe and nonsevere impairments at step two of the sequential analysis. Plaintiff argues that the ALJ erred by failing to include her nonsevere physical limitations in the RFC assessment. Specifically, Plaintiff contends that the ALJ erred in failing to consider her (A) history of bilateral shoulder surgery and (B) bilateral hearing loss in

the RFC. Based upon the following analysis, the court concludes that Plaintiff's first argument is without merit, and her second argument is harmless error.

  A.  <u>History of Bilateral Shoulder Surgery</u>

  In making the RFC determination, the ALJ professed to "have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."[15] The ALJ noted that Plaintiff had shoulder surgery in 2014, and an x-ray on May 21, 2015, showed "degenerative spurring at the undersurface of the acromion with interval chronic appearing erosion of the most lateral right clavicle";[16] however, no functional limitations were observed, reported, or complained of in the record from the alleged disability onset date forward.[17] He also noted that Plaintiff had reported shoulder pain and testified that she "could lift and/or carry only 5-10 pounds."[18] The ALJ did not incorporate any restrictions based on those self-described limitations, however, because he did not find them credible. The ALJ had already discussed Plaintiff's physical restrictions at length at the step-two section of his decision. He reviewed all the medical evidence, physical examinations, and the objective findings. He discussed treatment records and the Plaintiff's reports to her physicians, and he noted several inconsistencies. He then determined that there was

---

[15] AR 20-21.

[16] AR 18.

[17] The ALJ also evaluated Plaintiff's complaints of shoulder pain alongside her admission of a "prior pain pill addition," AR 488, 525, "normal clinic findings reported by her pain management provider," AR 522-30, absence of functional limitations or restrictions, and pain symptoms controlled with treatment, *id*.

[18] AR 19.

7

no supporting evidence to conclude that Plaintiff's past shoulder injuries limited her ability to function.[19] Moreover, Plaintiff herself did not allege problems with her physical condition but reported limitations with her mental condition only.[20]

It is true that the ALJ did not replicate this discussion in the section of his decision describing Plaintiff's RFC; however, this omission was not error. In the RFC section of the decision, after listing Plaintiff's symptoms, as noted above, the ALJ concluded that the "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record *for the reasons explained in this decision.*"[21] There was no need for the ALJ to repeat why he thought the Plaintiff's shoulder impairments did not cause any functional limitations. *Bradley,* 643 F. App'x at 676 (finding that the ALJ sufficiently considered plaintiff's impairment in determining his RFC when the ALJ discussed impairment in detail at step two but did not repeat the discussion at step four); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 730, 733-34 (10th Cir. 2005) (holding that an ALJ's factually-substantiated findings at other steps of the sequential-evaluation process provides a proper basis for upholding a step-three decision); *Fisher v. Colvin*, No. 2:16-CV-00054-DS, 2017 WL 448590, at *2 (D. Utah Feb. 2, 2017) (holding remand was unnecessary when the ALJ made sufficient factual findings at step two to support his RFC determination). For these reasons, the court finds that the ALJ's RFC determination with respect

---

[19] AR 18-20.

[20] AR 18, 240-47, 262-69.

[21] AR 21 (emphasis added).

to Plaintiff's history of bilateral shoulder surgery is supported by substantial evidence, and, therefore, Plaintiff's allegations of error fail.[22]

    B.    <u>Hearing Loss</u>

Next, Plaintiff posits that the ALJ failed to consider her bilateral hearing loss in the RFC after finding it to be nonsevere. As noted above, an ALJ must consider all of Plaintiff's impairments, including nonsevere ones, in making an RFC assessment. Indeed, there is no mention of bilateral hearing loss in the decision beyond the initial finding that it is medically determinable and nonsevere. However, despite the ALJ's failure to evaluate the functional limitations of Plaintiff's hearing loss, any error was harmless because this failure does not affect the outcome of the case. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1173 (10th Cir. 2012) (applying the doctrine of harmless error to judicial review of administrative decisions and declining to remand because the factual determinations would still compel denial of benefits); *Allen v. Barnhart,* 357 F.3d 1140, 1145 (10th Cir. 2004) (declining to remand for explicit consideration of an issue because reconsideration would not affect the outcome of the case).

The ALJ's specific determination of RFC must be supported by substantial evidence, but Plaintiff bears the burden of demonstrating functional limitations and the need for a more restrictive RFC. *Alvey v. Colvin*, 536 F. App'x 792, 794-95 (10th Cir. 2013). Plaintiff points to no evidence in the record to suggest that the hearing loss caused functional limitations greater than those considered by the ALJ. In fact, the record demonstrates the opposite. Specifically, the

---

[22] Additionally, the ALJ stated he considered all evidence in making his RFC determination. AR 20. "Where, as here, the ALJ indicates he has considered all the evidence our practice is to take the ALJ at his word." *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009). The court does not find reason to deviate from this practice in this case.

9

record reflects normal hearing and communication abilities,[23] and lacks any evidence of functional hearing limitations.[24] Indeed, Cort Leavitt, M.D. expressly found "no hearing abnormalities," and Plaintiff herself denies hearing limitations.[25] Because Plaintiff fails to show how further analysis would have altered the outcome of the ALJ's RFC assessment, and the evidence in this case does not indicate any functional hearing limitations, the court concludes that the ALJ's error was harmless.

## II. The ALJ Did Not Err in His Treatment of Medical Opinions.

Plaintiff contends that the ALJ erred (A) in his treatment of the opinions of Plaintiff's treating physician, Cantril Nielson, M.D. ("Dr. Nielson"); (B) in his treatment of the opinions of Stuart Squires, L.C.S.W. ("Mr. Squires"); and (C) by failing to evaluate the audiologic report of Brittany Garcia, Au.D. ("Ms. Garcia"). The court considers each argument in turn below and concludes the first two arguments fail, and the last argument is harmless error.

### A. Dr. Nielson

Plaintiff argues that the ALJ erred his evaluation of the medical opinions of Dr. Nielson.

> In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for controlling weight. To make this determination, the ALJ . . . must first consider whether the opinion is well[ ]supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well[ ]supported, he

---

[23] AR 471, 474, 477, 587.

[24] In fact, the audiologist report that Plaintiff relies notes "normal compliance with normal volume and pressure indicating acceptable eardrum mobility" and "word understanding was excellent (92% in right ear/88% in the left ear) in quiet." AR 608.

[25] AR 529, 579, 587.

> must then confirm that the opinion is consistent with other substantial evidence in the record. If the opinion is deficient in either of these respects, then it is not entitled to controlling weight.
>
> Even if a treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. §§ 404.1527 and 416.927]. Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.
>
> Under the regulations, the agency rulings, and [Tenth Circuit] case law, an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion . . . that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight. If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quotations and citations omitted) (sixth alteration in original); 20 C.F.R. §§ 404.1527(c), 416.927(c).

An ALJ is not required to discuss every factor set forth in the relevant regulations. *Oldham*, 509 F.3d at 1257 (stating that when an ALJ does not discuss every factor, it "does not prevent this court from according his decision meaningful review"). As with other evidentiary matters, when an ALJ is considering medical opinion evidence, it is the ALJ's role to weigh and resolve evidentiary conflicts and inconsistencies *See, e.g.*, *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000); *Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988). In his decision, the ALJ concluded that Dr. Nielson's opinions were entitled to no weight. Accordingly,

11

because the ALJ concluded that Dr. Nielson's opinions were not entitled to *any* weight, he necessarily found that those opinions were not entitled to *controlling* weight. Therefore, the court considers the propriety of the ALJ's decision to give no weight to Dr. Nielson's opinions.

In this case, the ALJ relied upon proper factors to support the conclusion that Dr. Nielson's opinions were entitled to no weight. The ALJ properly relied upon the fact that Dr. Nielson's opinions were not supported by and were inconsistent with the objective medical evidence in the record. 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4). Dr. Nielson's opinions were also inconsistent with his own treatment records and observations, and Plaintiff's own statements that she was "doing better on psychotropic medications and therapy."[26] The ALJ also properly relied upon the fact that Dr. Nielson's opinions went to issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1)-(3), 416.927(d)(1)-(3).

To the extent that Plaintiff reargues the weight of the evidence before the ALJ on this issue, the court notes that such a tactic is futile on appeal. It is not this court's role to reweigh the evidence before the ALJ. *Madrid*, 447 F.3d at 790. Indeed, the ALJ's role is to weigh and resolve evidentiary conflicts and inconsistencies. *Rutledge*, 230 F.3d at 1174; *Eggleston*, 851 F.2d at 1247. From an evidentiary standpoint, the only issue relevant to the court is whether substantial evidence exists in the record to support the ALJ's conclusions. *Oldham*, 509 F.3d at 1257 (providing that the court reviewing the ALJ's decision reviews "only the sufficiency of the evidence, not its weight" (emphasis omitted)). For these reasons, the court concludes that the ALJ did not err in his treatment of Dr. Nielson's opinions.

---

[26] AR 23, 474.

12

B.     Mr. Squires

Plaintiff next argues that the ALJ erred in his treatment of the opinions of Mr. Squires by failing to describe why they were not entitled to controlling weight. However, Mr. Squires is a licensed clinical social worker, which, as a professional group, are not considered "acceptable medical sources" under the law, 20 C.F.R. §§ 404.1513, 416.913, and, therefore, their opinions are not entitled to controlling weight. SSR 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006); *see also Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007); *Zagorianakos v. Colvin*, 81 F. Supp. 3d 1036, 1043 (D. Colo. 2015). Although "these 'other sources' cannot establish the existence of a medically determinable impairment," which requires "evidence from an 'acceptable medical source,'" "other sources may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, at *3. When considering opinion evidence from other sources, the ALJ must use the same factors used to weigh the opinions from acceptable medical sources. *Id.* at *4–5; *Zagorianakos*, 81 F. Supp. 3d at 1044.

Here, as required, the ALJ considered the opinions of Mr. Squires using the factors as outlined above. The ALJ properly relied on the fact that Mr. Squires's opinions were inconsistent with mental examination findings reported by primary care sources which showed relatively normal limits with some depressive and anxiety symptoms.[27] 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4). Mr. Squires did not submit documentary evidence or treatment records to support his opinions, and his conclusions seem to be more of a reflection of the subjective statements given by Plaintiff rather than clinical evaluation.[28] Moreover, Mr. Squires's opinions

---

[27] AR 567, 570, 575.

[28] AR 21-22, 461-62, 563-66.

13

were inconsistent with other findings in the record. Specifically, Plaintiff's primary care records show her medical condition improved with medical treatment, and examinations consistently observed Plaintiff as cooperative, having good attention, being alert and oriented, and arriving at appointments alone.[29] The ALJ also properly relied upon the fact that Mr. Squires's opinions went to issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1)-(3), 416.927(d)(1)-(3).

In her arguments comparing Mr. Squires's opinions and the treatment records of John Gill, Ph.D. and William Christensen, A.P.R.N., Plaintiff again reargues the weight of the evidence before the ALJ. The court again notes that such an effort is futile on appeal. *Oldham*, 509 F.3d at 1257; *Lax*, 489 F.3d at 1084; *Madrid*, 447 F.3d at 790; *Rutledge*, 230 F.3d at 1174; *Eggleston*, 851 F.2d at 1247. For the foregoing reasons, the court concludes that the ALJ did not err in evaluating Mr. Squires's opinions.

    C.    <u>Ms. Garcia</u>

Plaintiff argues that the ALJ erred in his evaluation of the opinions of Ms. Garcia. It is true that the ALJ did not specifically discuss the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c) when he evaluated Ms. Garcia's opinions. However, the court concludes that any error the ALJ committed in that regard was harmless. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *see also Fischer-Ross*, 431 F.3d at 733-34 (recognizing applicability of harmless error analysis in Social Security context). As noted above, Ms. Garcia's

---

[29] AR 471, 474, 477, 522-30.

14

opinions are inconsistent with and not supported by the record, and the record does not reflect that Plaintiff has any trouble effectively communicating. Moreover, the audiologist report does not include a diagnosis but rather makes a recommendation "for further medical evaluations" and suggests "strategies for improving speech understanding."[30] Consequently, the court cannot say that the ALJ's failure to discuss the weight he assigned to Mr. Garcia's opinions prejudiced Plaintiff because Mr. Garcia did not render a diagnosis. *See, e.g.*, *Keyes-Zachary,* 695 F.3d at 1162-63 (concluding that the ALJ's failure to assign specific weight to a medical opinion was harmless where the RFC assessment was generally supported by substantial medical evidence); *see also Bernal v. Bowen,* 851 F.2d 297, 303 (10th Cir. 1988) (mere fact of error does not warrant remand if the ALJ's determination is otherwise supported by substantial evidence). Accordingly, the ALJ did not commit reversible error.

## ORDER

The court concludes that all of Plaintiff's arguments fail. Accordingly, IT IS HEREBY ORDERED that the Commissioner's decision in this case is AFFIRMED.

IT IS SO ORDERED.

DATED this 19th day of October 2020.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[30] AR 608-09.

15